# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
### Springfield Division

| | |
|---|---|
| ANDREW ZIMMERMANN and KELLY ZIMMERMANN, as class representatives for the certified ZIMMERMANN ACTION CLASSES,<br><br>Plaintiffs,<br><br>v.<br><br>EPSTEIN BECKER AND GREEN, P.C., PAUL M. KAPLAN, ESQ., SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP, BRIAN J. DAVIS, P.C., BRIAN J. DAVIS, ESQ., P.C., BRIAN J. DAVIS, ESQ., SPENCE & DAVIS, LLP, DOUGLAS D. VIVIANI, P.C., and DOUGLAS D. VIVIANI, ESQ.<br><br>Defendants. | Civil Action No.<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT TO ENFORCE CONSTRUCTIVE TRUST
## AND JUDGMENTS ENTERED BY THIS COURT

Plaintiffs Andrew Zimmermann and Kelly Zimmermann, as certified class representatives for the certified classes in the action pending in this Court styled *Zimmerman v. Cambridge Credit Counseling Corp.*, Case No. 03-cv-30261-MAP  (also cited as *Zimmerman* (sic) *v. Cambridge Credit Counseling Corp.*) (the "*Zimmerman* Action") (collectively, "Plaintiffs"), for their complaint against defendants Epstein Becker and Green, P.C., ("EBG"), Sheppard, Mullin, Richter & Hampton, LLP, ("Sheppard Mullin"), Paul M. Kaplan, Esq., Brian J. Davis. P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Spence & Davis, LLP, Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq. (collectively "Defendants"), upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, allege as follows:

## NATURE OF THE ACTION

1.      This action is related to the *Zimmerman* Action pending before the Honorable Michael A. Ponsor.

2.      On December 6, 2007, this Court certified a nationwide class action in the *Zimmerman* Action beginning on November 3, 1998.  Among the hundreds of thousands of injured consumers certified as part of the Classes, were the debt management plan customers of defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J, Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq.

3.      This Court in the *Zimmerman* Action subsequently awarded summary judgment to the certified classes and entered judgments in favor of the certified classes in the amounts of $259,085,983 and $256,527,000.

4.      On March 18, 2009, this Court's final Order in the *Zimmerman* Action adjudicated the existence of a constructive trust (the "Constructive Trust") for the full amount of the judgment awards due and owing to the certified classes.

5.      Each of the Defendants in this action was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the classes certified in the *Zimmerman* Action.  This action seeks the return of any and all Constructive Trust proceeds paid to Defendants for the benefit of the classes certified in the *Zimmerman* Action.

6.      In addition to the claims to recover Constructive Trust proceeds, Plaintiffs also bring claims under the Credit Repair Organizations Act ("CROA") against all defendants except Sheppard Mullin.  Each of those defendants was a credit repair organization or "person" under CROA and a participant in the same conduct that has resulted in entry of summary judgment and judgment in the *Zimmerman* Action for violations of CROA.

## JURISDICTION AND VENUE

7.      This Complaint is filed and these proceedings are instituted under federal statutes over which this Court has federal question subject matter jurisdiction and under state statutes over which this Court has supplemental subject matter jurisdiction.

8.      The jurisdiction of this Court is based upon 28 U.S.C. §1331 and 15 U.S.C. §1679g.

9.      The subject matter of this Court is further based upon the March 18, 2009 Judgment Order Regarding Defendants John and Richard Puccio in the *Zimmerman* Action (Document No. 420), wherein the Court "expressly reserv[ed] jurisdiction" over matters related to the *Zimmerman*

3

Action and litigation concerning the judgments entered in the *Zimmerman* Action for the benefit of the certified class.

10.     The subject matter of this Court is further based upon the All Writs Act, 28 U.S.C. §1651, and 28 U.S.C. §3202, which provide the federal courts with jurisdiction to issue writs in enforcement of its judgments.

11.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a).

12.     This Court possesses personal jurisdiction over each Defendant based on each Defendant's residence, presence, transaction of business and contacts within the United States, Massachusetts and/or this District.

13.     Venue is proper within this District under 28 U.S.C. §1391. A substantial part of the events or omissions giving rise to the claims and injury alleged occurred in this District.

## THE PARTIES

*Plaintiffs*

14.     Plaintiffs are the named plaintiffs, certified class representatives and members of the classes certified by this Court in the *Zimmerman* action, which certified classes are the beneficiaries of a Constructive Trust established by this Court in its *Zimmerman* Action judgments.

*Defendants*

15.     EBG is a New York professional corporation engaged in the practice of law.  With the express and constructive knowledge that the plaintiffs in the *Zimmerman* and *Limpert* Actions sought the creation of a constructive trust for the benefit of a class and with the knowledge of unlawful acts alleged in the *Zimmerman* and *Limpert* Actions (*Limpert* Action defined below in

¶22) and other governmental lawsuits, audits and/or investigations, which unlawful acts were assisted by EBG, EBG accepted the engagement to represent defendants in the *Zimmerman* and *Limpert* Actions, and in other matters. EBG remained counsel in the *Zimmerman* Action until October 28, 2005 and in the *Limpert* Action until September 30, 2005. During the term of the Constructive Trust, EBG was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action. A partial list of the monies paid to EBG that derived from and are traceable to the Constructive Trust includes the following payments:

(a).    $87,038, as listed in the IRS Form 990 filed by Cambridge Credit Counseling Corporation ("CCCC") for the year ended July 31, 1999;

(b).    $373,592, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2000;

(c).    $446,250, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2001;

(d).    $890,000, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2002;

(e).    $850,000, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2003;

(f).    $1,397,954, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2004;

(g).   $2,118,498, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2005;

(h).   $578,678, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2006;

(i).   $168,296, as listed in the 2003 IRS Form 990 filed by Cambridge Brighton Budget Planning Corporation ("CBBPC"); and

(j).   $13,138.08 from CBBPC in 2005.

16.   Paul M. Kaplan, Esq. is an attorney, who was a shareholder or associated with EBG and thereafter became a partner or associated with Sheppard Mullin. He assisted John and Richard Puccio in establishing their credit counseling conglomerate by forming their for-profit and non-profit business entities, advised them concerning CCCC's asset purchase from *Zimmerman* Action Defendants Cambridge Credit Corporation and Brighton Credit Corporation, and advised John and Richard Puccio that they could transfer a for-profit business model to a non-profit business headquartered in Massachusetts.  With the express and constructive knowledge that the plaintiffs in the *Zimmerman* and *Limpert* Actions sought the creation of a constructive trust for the benefit of a class and with the knowledge of unlawful acts alleged in the *Zimmerman* and *Limpert* Actions and other governmental lawsuits, audits and/or investigations, which unlawful acts were assisted by Paul Kaplan while a partner or shareholder or attorney at EBG and Sheppard Mullin, Paul Kaplan accepted the engagement to represent defendants in the *Zimmerman* and *Limpert* Actions, and in other matters. During the term of the Constructive Trust, Paul M. Kaplan was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been

the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action.  A partial list of the monies paid to directly and individually to Paul M. Kaplan, in addition to Constructive Trust proceeds paid to Paul M. Kaplan that flowed through accounts maintained by EBG and/or Sheppard Mullin, that derived from and are traceable to the Constructive Trust includes the following payments:

    (a).    $125,000 on September 17, 2003, in a check from John Puccio;

    (b).    $50,000 on November 11, 2003, in a check from John Puccio;

    (c).    $25,000 on December 30, 2003, in a check from John Puccio.

    (d).    $50,000 from CCCC in 2001;

    (e).    $25,000 from CCCC in 2002;

    (f).    $104,166.65 from Brighton Credit Management Corp. ("BCMC") in 2001;

    (g).    $256,167.25 from BCMC in 2002;

    (h).    $301,499.96 from BCMC in 2003;

    (i).    $139,999.96 from BCMC in 2004;

    (j).    $32,499.99 from BCMC in 2005;

    (k).    $50,000 from Brighton Credit Corp. of Massachusetts ("BCCM") in 2001; and

    (l).    $11,908 from BCCM in 2000.

17.    Sheppard Mullin is a California limited liability partnership engaged in the practice of law.  With the express and constructive knowledge that the plaintiffs in the *Zimmerman* and *Limpert* Actions sought the creation of a constructive trust for the benefit of a class and with the knowledge of unlawful acts alleged in the *Zimmerman* and *Limpert* Actions and other

governmental lawsuits, audits and/or investigations, Sheppard Mullin accepted the engagement to represent defendants in the *Zimmerman* and *Limpert* Actions, and in other matters. Sheppard Mullin remained counsel in the *Zimmerman* Action until July 6, 2006 and in the *Limpert* Action until January 20, 2006. During the term of the Constructive Trust, Sheppard Mullin was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action. A partial list of the monies paid to Sheppard Mullin that derived from and are traceable to the Constructive Trust includes the following payments:

(a).      $170,000, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2006; and

(b).      $79,360, as listed in the IRS Form 990 filed by CCCC for the year ended July 31, 2007.

18.      Brian J. Davis is an attorney, and the sole shareholder of Brian J. Davis, P.C. and Brian J. Davis, Esq., P.C., both New York professional corporations that are or were engaged in the practice of law. In active concert with the defendants in the *Zimmerman* Action, Brian J. Davis, Esq., Brian J. Davis, P.C. and/or Brian J. Davis, Esq., P.C. were credit repair organizations and "persons" under the CROA, who enrolled clients in DMPs serviced and administered by Brighton Credit Corporation of Massachusetts, Brighton Debt Management Services, Ltd. and/or First Consumer Credit Management Corporation, which clients are among the certified Class 1 in the *Zimmerman* Action, and which class members obtained summary judgment for violations of CROA. In addition, with the express and constructive knowledge that the plaintiffs in the

*Zimmerman* and *Limpert* Actions sought the creation of a constructive trust for the benefit of a class and with the knowledge of unlawful acts alleged in the *Zimmerman* and *Limpert* Actions and other governmental lawsuits, audits and/or investigations, which unlawful acts were assisted by Brian J. Davis, Esq., Brian J. Davis, P.C. and/or Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Brian J. Davis, P.C. and/or Brian J. Davis, Esq., P.C. accepted the engagement to represent defendants in the *Zimmerman* and *Limpert* Actions, and in other matters.  Brian J. Davis, Esq., Brian J. Davis, P.C. and/or and Brian J. Davis, Esq., P.C. remained counsel in the *Zimmerman* Action until July 14, 2008, and are still counsel of record in the *Limpert* Action.  During the term of the Constructive Trust, Brian J. Davis, Esq., Brian Davis, P.C. and/or and Brian J. Davis, Esq., P.C. were paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action.  A partial list of the monies paid to Brian J. Davis, Esq., Brian J. Davis, P.C. and/or and Brian J. Davis, Esq., P.C. that derived from and are traceable to the Constructive Trust includes the following payments:

(a).    $233,313 as listed in the IRS Form 990 filed CCCC for the year ended July 31, 2005.

(b).    $87,218.50 from CCCC in calendar year 2005; and

(c).    $10,000 on September 29, 2005, in a check from John Puccio.

19.    Spence & Davis, LLP is New York liability partnership engaged in the practice of law.  Upon information and belief, Spence & Davis LLP is the successor-in-interest to Brian J.

Davis, P.C. and/or Brian J. Davis, Esq.  Upon information and belief, Brian J. Davis, Esq. is a partner in Spence & Davis LLP.

20.     Douglas D. Viviani, Esq., is an attorney and the sole shareholder of Douglas D. Viviani, P.C., a New York professional corporation that is or was engaged in the practice of law. In active concert with the defendants in the *Zimmerman* Action, Douglas D. Viviani, Esq. and/or Douglas D. Viviani, P.C. were credit repair organizations and "persons" under the CROA, who enrolled clients in DMPs serviced and administered by Brighton Credit Corporation of Massachusetts, Brighton Debt Management Services, Ltd. and/or First Consumer Credit Management Corporation, which clients are among the Class 1 certified in the *Zimmerman* Action, which class members obtained summary judgment for violations of CROA.  In addition, with the express and constructive knowledge that the plaintiffs in the *Zimmerman* and *Limpert* Actions sought the creation of a constructive trust for the benefit of a class and with the knowledge of unlawful acts alleged in the *Zimmerman* and *Limpert* Actions and other governmental lawsuits, audits and/or investigations, which unlawful acts were assisted by Douglas D. Viviani, Esq. and/or Douglas D. Viviani, P.C., Douglas D. Viviani, Esq. and/or Douglas D. Viviani, P.C. accepted engagements to represent defendants.  During the term of the Constructive Trust, Douglas D. Viviani, Esq. and Douglas D. Viviani, P.C. was paid monies deriving from and traceable to the Constructive Trust, which monies have at all times been the property of the Constructive Trust beneficiaries, namely the certified classes in the *Zimmerman* Action.

## FACTUAL ALLEGATIONS

21.     The *Zimmerman* Action was filed in this Court on November 3, 2003.

22.     On November 25, 2003, a related action to the *Zimmerman* Action seeking class certification of a substantially similar class of consumers was filed in the United States District Court for the Eastern District of New York.  That action was styled, *Limpert* v. *Cambridge Credit Counseling Corp.*, Case No. 03-cv-5986-TCP-WDW (the "*Limpert* Action").  The *Zimmerman* and *Limpert* Actions were litigated in a coordinated fashion.

23.     This Court granted Plaintiffs' motion for class certification in the *Zimmerman* Action on December 6, 2007, therein certifying the following classes:

(a).     A sub-class of all individuals who entered into a contract for a debt management plan with Cambridge Credit Counseling Corp. [CCCC] from November 3, 1998 through September 18, 2006 ("Sub-Class 1"); [and]

(b).     A class of all individuals who at ant time after November 3, 1998 through the present paid, directly or directly, any money or other valuable consideration to Brighton Credit Corp. of Massachusetts, Brighton Debt Management Services, Ltd., First Consumer[] Credit Management Corp. for any service related to the individual's DMP ("Class 1").

*Zimmerman* Action Document Nos. 230, 231.  Class 1 and Class 2 certified by Judge Ponsor are collectively referred to herein as the "Classes."

24.     The certified *Zimmerman* Action classes include the DMP clients of Brian Davis, P.C., Brian J. Davis, Esq., P.C., Brian Davis, Esq., Douglas S. Viviani, P.C. and Douglas D. Viviani, Esq., insofar as those lawyers and law firms worked in concert with the *Zimmerman* Action defendants, from the same offices, and agree to pay the Puccio-owned for-profit

companies, namely Brighton Credit Corp. of Massachusetts, Brighton Debt Management Services, Ltd., First Consumer[] Credit Management Corp., to provide services to their DMP clients. *See Zimmerman* Action Document Nos. 341, 341-2 (court-approved notice to certified classes).

25.     On January 7, 2008, this Court in the *Zimmerman* Action granted Plaintiffs' and the certified classes' motion for summary judgment under the Credit Repair Organizations Act and M.G.L. c. 93A. *Zimmerman* Document No. 233, *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254 (D. Mass. 2008) (Ponsor, J.).

26.     That summary judgment decision determined that each of the *Zimmerman* Action defendants was a credit repair organizations or a CROA "person" based upon their collective activities in controlling, marketing, soliciting, selling, servicing and/or administering DMPs or profiting from the ownership and control of the *Zimmerman* Action Defendants who engaged in the unlawful conduct.

27.     The summary judgment decision held that the credit repair organizations and/or CROA persons, were each liable to Plaintiffs and the Classes for failing to comply with the CROA disclosure provisions, the CROA right to cancel provisions, the CROA prohibition on collecting advance fees and the CROA prohibition on making deceptive and misleading statements.

28.     This Court's summary judgment decision stated as follows:

Between its creation and December 31, 2004, CCCC received $185,736,640 of income from customers. Clients' initial up-front payments accounted for $70,494,408 of that amount, with the rest coming from monthly fees. From November 3, 1998 to December 31, 2004, BCMC earned $63,057,703 from customer payments and CBBPC earned $10,291,640.

*Zimmerman*, 529 F. Supp. 2d at 262.

29.    The *Zimmerman* Action summary judgment decision further held that the defendants violated the Massachusetts Consumer Protection Act, M.G.L. c. 93A, for engaging in unfair and deceptive acts and practices.  *See Zimmerman*, 529 F. Supp. 2d at 280-81.

30.    CCCC, CBBPC and the other corporate defendants in the *Zimmerman* Action were the alter egos of John Puccio and Richard Puccio, as held by this Court, and all monies paid to or from any of the *Zimmerman* Action defendants were for the benefit of John and Richard Puccio. *See Zimmerman*, 529 F. Supp. 2d at 271-72, 280.

31.    On December 2, 2008, this Court entered judgment against the entity defendants in the *Zimmerman* Action, jointly and severally, in the amount of $259,085,983.00.   In its ORDER REGARDING PLAINTIFFS['] *EX PARTE* MOTION FOR DEFAULT JUDGMENT AGAINST ALL UNREPRESENTED ENTITY DEFENDANTS entered that same day, this Court stated:

> The amount of judgment against the defaulted entities listed above is $259,085,983.00. The court has previously entered judgment on liability based upon its allowance of Plaintiff's Motion for Summary Judgment. See Dkt. No. 33. The amount of money that the court found was paid by consumers directly or indirectly to the defendants now defaulted is virtually uncontested. *See* Dkt. No. 233 at 16 and 15 U.S.C. §1679(g)(1)(B). This amount of judgment is without any multiplier, which plaintiffs would very possibly be entitled to under the pertinent statutes. The very remote likelihood, as a practical matter, that the defaulted entities will be capable of paying a judgment remotely equaling the $259,085,983.00 sum ordered by the court, however, makes consideration of any enhanced judgment unnecessary.

*Zimmerman* Action Document No. 313 at 2-3.

32.    On March 18, 2009, this Court entered judgment in the *Zimmerman* Action against defendants John Puccio and Richard Puccio, Esq., "jointly and severally with one another and all

other defendants pursuant to this Court's prior judgment," in the amount of $256,527,000, plus

interest and costs. *Zimmerman* Action Document No. 420.  The March 18, 2009 JUDGMENT

ORDER REGARDING DEFENDANTS JOHN AND RICHARD PUCCIO further imposed a

constructive trust for the full amount of the judgments entered in the *Zimmerman* Action for the

benefit of the certified class:

> Pursuant to the Court's inherent equitable powers and the equitable powers granted by M.G.L. Chapter 93A, §11, the Court imposes the following equitable and declaratory relief.  The Court finds that because John Puccio and Richard Puccio are or were agents or representatives of such CSOs within the meaning of M.G.L. Chapter 93, §68B, and were persons within the meaning of 15 U.S.C section 1679b, who engaged in a pervasively deceptive course of business involving fraudulent misrepresentations to consumers by former CCCC, and by other defendant organizations during the class period, all for the purpose of receiving personal benefit from the defendant entities and from former defendant CCCC, grounds exist for the imposition of other and further equitable relief.  Therefore, the Court does hereby ADJUDGE ORDER AND DECREE the imposition of a constructive trust over all fees that consumers paid to the current or former defendant entities, including Cambridge Credit Counseling Corp.  Such trust shall include without limitation all monies or benefits in kind, whether salary, distributions, or other payments of money, satisfaction of accounts or charges for services or purchases of real or personal property:
>
> a.      traceable as payment from any defendant or former defendant to or for the benefit of John or Richard Puccio;
>
> b.      traceable as payment from any defendant or former defendant to or for the benefit of members of the families, friends or associates John Puccio and/or Richard Puccio; and/or;
>
> c.      traceable as payment from any defendant or former defendant to or for the benefit of any manager or employee of any defendant or former defendant that is in excess of the fair value of such person's services rendered.

33.      After the filing of the *Zimmerman* Action, certain of the *Zimmerman* Action

defendants were sued or investigated by various state Attorneys General and federal government

agencies.  Among the states or commonwealths that filed lawsuits against the *Zimmerman* and *Limpert* action defendants were Massachusetts, Illinois and North Carolina.

34.    After the filing of the *Zimmerman* Action, the IRS issued an audit report recommending revocation of the federal tax exempt status of CCCC, based on conduct that was the subject of the *Zimmerman* and *Limpert* Actions, and the state Attorney General lawsuits and investigations.

35.    The original Application 1023 was prepared and submitted by EBG and Kaplan. As a basis for determining in its summary judgment decision that the *Zimmerman* Action defendants were Credit Repair Organizations, this Court recounted that the Form 1023 prepared by EBG and Kaplan stated that CCCC would perform credit repair services, a promise made not only to the IRS, but subsequently repeated to consumers nationwide:  "The IRS form accompanying CCCC's application for §501(c)(3) status,  signed by defendant John Puccio, stated that the company's clients would enjoy, among other benefits, an 'Improved Credit Rating.'" *Zimmerman*, 529 F. Supp. 2d at 258-259.

36.    Although CBBPC had sought to obtain federal tax-exempt status, CBBPC subsequently abandoned its efforts to gain federal tax-exempt status.  EBG and Paul Kaplan again prepared and submitted the application to the IRS for CBBPC to obtain federal tax-exempt status.

37.    In November 2005, EBG filed a lawsuit against CCCC, John Puccio and Richard Puccio in the Supreme Court of the State of New York seeking the payment attorneys' fees exceeding $1.5 million.  In that lawsuit, EBG represented that it performed the following services

and assistance to CCCC and the Puccio brothers:  "among other things:  • General corporate work;  • Procuring IRS tax-exempt status; • Various regulatory matters; and • Defending legal actions, primarily two class actions  [the *Zimmerman* and *Limpert* Actions]."  In response to this lawsuit, CCCC filed a counter-claim against EBG for legal malpractice.

38.     The September 21, 2005 Affidavit of Kenneth Kelly, filed in support of EBG's motion to withdraw as counsel in the *Limpert* Action stated:  EBG, through its then-partner, Paul M. Kaplan, Esq., represented Cambridge Credit for roughly the last seven years."  As further described in Count III, this representation included assisting the *Zimmerman* Action defendants in making promises of credit repair that violated CROA.

39.     While a partner at EBG, defendant Kaplan met with John and Richard Puccio beginning in November 1998 to discuss and implement CCCC's "new business strategy to take Cambridge Credit nationwide."   A letter from Kaplan to John and Richard Puccio, dated November 24, 1998, confirmed the meeting and its purpose.

40.     A May 22, 2001 letter from Kaplan to the New York Banking Department further discusses these developments:

> The Corporation [CCCC] was licensed by the [New York Banking] Department in 1997 as a budget planner, but that license was not utilized because the Department determined that the Corporation's proposed fee structure was unreasonable under Article 12-C Banking Law §585.   As a result of this determination by the Department in 1997, Cambridge Credit established its headquarters in Massachusetts, where it remains to this day.  In Massachusetts, Cambridge Credit operates its credit counseling business on a nationwide basis (with the exception of New York residents), subject to the oversight of the Massachusetts State Attorney General's Office and its rigorous consumer protection statutes, M.G.L.A Chapter 93A §1, et seq.

41.     Defendant Kaplan represented the Puccios and their credit repair companies even prior to his association with EBG, as an attorney with the law firm of Baer Marks & Upham LLP. That representation included advising and assisting the Puccios and *Zimmerman* Action defendants Cambridge Credit Corporation ("CCC") and Brighton Credit Corporation ("BCC") in a October 28, 1996 cease and desist order by the New York Banking Department for violating the New York budget planning rules.

42.     In November 2005, EBG filed a lawsuit against CBBPC, and others, in the Supreme Court of the State of New York seeking the payment attorneys' fees exceeding $186,000, plus disbursements. In that lawsuit, EBG represented that it performed the following services and assistance to CBBPC: "among other things: • General corporate work; • Procuring IRS tax-exempt status; • Various regulatory matters; and • Defending legal actions, primarily two class actions [the *Zimmerman* and *Limpert* Actions]."

43.     From the commencement of the *Zimmerman* and *Limpert* Actions, the plaintiffs in those actions sought the creation of a constructive trust for the benefit of the injured classes of consumers. Each of the law firms and lawyers named as Defendants in this Action accepted engagements to represent the *Zimmerman* and *Limpert* Action defendants with that knowledge.

44.     CCCC, CBBPC and the other entity defendants in the *Zimmerman* Action were the alter egos of John Puccio and Richard Puccio. All monies paid by these entities to the Defendants in this action were payments made for the benefit of John and Richard Puccio.

45.     Each of the Defendants was paid money deriving from and belonging to the Constructive Trust.  Those trust monies must be returned to the Constructive Trust beneficiaries, namely the certified Classes.

46.     On or about June 16, 2009, Class Counsel demanded the return of monies paid to Brian J. Davis, P.C. Brian J. Davis, Esq., P.C., and Brian J. Davis, Esq. that are property of the Constructive Trust created by this Court *Zimmerman* Action for the benefit of the certified classes. Brian J. Davis, P.C. and Brian J. Davis, Esq. refused to return monies that are the property of the constructive trust.

47.     On or about June 22, 2009, Class Counsel demanded the return of monies paid to EBG that are property of the Constructive Trust created by this Court *Zimmerman* Action for the benefit of the certified classes.  EBG refused to return monies that are the property of the constructive trust.

48.      On or about June 22, 2009, Class Counsel demanded the return of monies paid to Sheppard Mullin that are property of the Constructive Trust created by this Court *Zimmerman* Action for the benefit of the certified classes.  Sheppard Mullin has not returned monies that are the property of the constructive trust.

## COUNT I

### RECOVERY OF CONSTRUCTIVE TRUST PROCEEDS

### (Against All Defendants)

49.     Plaintiffs repeat and reallege Paragraphs 1 through 48 as though set forth herein.

50.     This Court in the *Zimmerman* Action imposed the Constructive Trust for the benefit of the certified Classes in the *Zimmerman* Action.   The Plaintiffs are the certified representatives for those certified Classes.

51.     The Constructive Trust was adjudicated and created on March 18, 2009 and includes all monies paid by or for the benefit of John and/or Richard Puccio to Defendants, including monies paid by the entity defendants in the Zimmermann Action to Defendants.

52.     Each Defendant has been paid monies derived from and traceable to the Constructive Trust and its beneficiaries, namely the certified *Zimmerman* Action classes.

53.     Each Defendant accepted payment of monies derived from and traceable to the Constructive Trust with the express or constructive knowledge that Plaintiffs in the *Zimmerman* Action and the plaintiffs in the *Limpert* Action sought a constructive trust over monies paid by the certified classes to the *Zimmerman* and *Limpert* Action defendants.

54.     To the extent any Defendant has distributed to any other person monies paid to it from or for the benefit of the *Zimmerman* Action defendants and derived from and traceable to the constructive trust, those distributions are traceable and the property of the Constructive Trust created by this Court in the *Zimmerman* Action.

55.     No Defendant has returned or refunded any portion of Constructive Trust proceeds in its possession, or in the possession of others to whom any Defendant distributed Constructive Trust proceeds.

56.     Plaintiffs, as the certified class representatives for the certified *Zimmerman* Action classes, seek the return and refund of all Constructive Trust proceeds paid to or in the possession of all Defendants, with interest allowed by law.

## COUNT II.

### FOR VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

**(Against Defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Spence & Davis LLP, Douglas Viviani, P.C. and Douglas Viviani, Esq.)**

57.     Plaintiffs repeat and reallege Paragraphs 1 through 56 as though set forth herein.

58.     Plaintiffs and each member of Class 1 certified by this Court in the *Zimmerman* Action is a "consumer" as that term is defined in 15 U.S.C. §1679a.

59.     Defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq. (collectively the "Davis and Viviani Defendants") used instrumentalities of interstate commerce, including the United States mails and wires, in connection with their violations of CROA,

60.     The Class 1 certified by this Court in the *Zimmerman* Action includes the DMP clients of Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq.

61.     The Davis and Viviani Defendants violated CROA for each of the same reasons set forth in this Court's *Zimmerman* Action summary judgment decision and order.

62.     Defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq. are each a "credit repair organization" as that term is defined in 15 U.S.C. §1679a(3)(A).

63.     Defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq. are each a "person" as that term is used in 15 U.S.C. §§ 1679b and 1679g.

64.     Defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq. made untrue and misleading statements in violation of 15 U.S.C. §1679b(a)(3), whether or not any Davis and Viviani Defendant is itself or himself a credit repair organization.

65.     Defendants Brian J. Davis, P.C., Brian J. Davis, Esq., P.C., Brian J. Davis, Esq., Douglas D. Viviani, P.C. and Douglas D. Viviani, Esq. engaged in fraud and/or deception to certified *Zimmerman* Action class members in connection with the offer or sale of the services of a credit repair organization in violation of 15 U.S.C. §1679b(a)(4), whether or not any Davis and Viviani Defendant is itself or himself a credit repair organization.

66.     The Davis and Viviani Defendants used instrumentalities of interstate commerce, including the internet, television and/or the mails to sell, provide or perform (or represent that they could or would sell, provide or perform) services, in return for the payment of money or other valuable consideration, for the express or implied purpose of (i) improving consumer's credit record, credit history or credit rating; and/or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

67.     As stated by this Court in its summary judgment decision, such statements were made to consumers who responded to advertising by the *Zimmerman* Action defendants, including consumers ultimately enrolled in DMPs with the Davis and Viviani Defendants:

However, their advertisements, employees, and informational materials undisputedly and repeatedly made statements to consumers indicating that their debt management services would "restore your credit rating" and "improve your credit." These representations were unequivocal, including comments such as the one in the script used to discourage settlement of debts indicating that a DMP "can only help your credit."

*Zimmerman*, 529 F. Supp. 2d at 274.

Given the additional undisputed factual evidence now available to this court on summary judgment, it is clear that Defendants crossed the boundary from credit counseling into credit repair with their continued and insistent representations to consumers that their services could only help *improve* clients' credit. Defendants trespassed into the forbidden territory of offering hope that their services could somehow allow a "fresh start" despite a past history of poor credit that, by law, could not be erased.

*Zimmerman*, 529 F. Supp. 2d at 275 (italics in original).

The ostensibly forward-looking orientation of these representations does not mitigate the obvious message to debtors that Defendant's services might modify the effect of their *past* credit history on their credit score.

*Zimmerman*, 529 F. Supp. 2d at 275.

68.     The Davis and Viviani Defendants utilized the same false and deceptive advertisements used by CCCC, and CBBPC to lure consumers with promises of credit improvement.  The allegations setting forth these advertisements and the promises of credit repair in the *Zimmerman* Action Amended Complaint (Document No. 65) are incorporated herein as if set forth fully herein.

69.     Certain of the Certified Class 1 members who joined the Davis and Viviani Defendants' DMPs continue to this day to be enrolled in their DMP.

70.     The Davis and Viviani Defendants have charged and collected payment from consumers in advance of the full performance of promised services in violation of 15 U.S.C. §1679b(b).

71.     The Davis and Viviani Defendants have further violated CROA by failing to provide notices, disclosures and contracts required by and conforming with 15 U.S.C. §§ 1679c, 1679d and 1679e.

72.     Plaintiffs and each member of Class 1 certified by the *Zimmerman* Action have been injured as a result of Defendants' violations of CROA.

73.     Plaintiffs and each member of Class 1 certified by the *Zimmerman* Action are entitled to pursue a claim against the Davis and Viviani Defendants pursuant to 15 U.S.C. §1679g to redress their violations of CROA.

74.     Spence & Davis LLP is a defendant for this Count to the extent is the successor-in-interest to, or possesses any of the assets of, any of the Davis or Viviani Defendants, or to the extent it or its principles, partners, employees or agents have violated CROA since its inception.

75.     The Classes' CROA damages are restitutionary and are measured by the CROA as the "amount paid" by a consumer to the credit repair organization.  Plaintiffs demand damages from the Davis and Viviani Defendants, jointly and severally with one another and the *Zimmerman* Action defendants, in an amount equal to the total amount of fees paid by members of the certified *Zimmerman* Action Classes to the Zimmerman Action defendants in all years during the certified

class periods that the Davis and Viviani Defendants were either credit repair organizations or CROA "persons."

## COUNT III.

## FOR VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

### (Against Defendants EBG and Paul Kaplan)

76.     Plaintiffs repeat and reallege Paragraphs 1 through 75 as though set forth herein.

77.     Plaintiffs and each member of Class 1 certified by this Court in the *Zimmerman* Action is a "consumer" as that term is defined in 15 U.S.C. §1679a.

78.     According to documents produced in connection with the *Zimmerman* and *Limpert* Actions, EBG and Kaplan advised and assisted the *Zimmerman* Action defendants in making statements in their advertising promising credit repair in violation of CROA.

79.     EBG and Kaplan are each a "person" as that term is used in 15 U.S.C. §§ 1679b and 1679g.

80.     EBG and Kaplan used instrumentalities of interstate commerce, including the United States mails and wires, in connection with their violations of CROA, and specifically 15 U.S.C. §1679b(a)(4).

81.     EBG and/or Kaplan engaged in violations of 15 U.S.C. §1679b(a)(4), which forbids a CROA person from: "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

82.     Among other violations of 15 U.S.C. §1679b(a)(4), Kaplan and other professionals employed by EBG advised CCCC to advertise its DMPs by representing that the DMPs can repair consumers' credit, while knowing that the Cambridge family of companies controlled by John and Richard Puccio did not comply with notice, disclosure and other consumer protections required by CROA.  In a memorandum from EBG to officers of various *Zimmerman* Action defendants, dated May 30, 2003, EBG suggested the following alternative language to appear in a Debt Relief Clearinghouse, Ltd. ("DRCH") advertisement:

> "[S]o here's the good news.  [I]n those circumstances, over time, following the program can actually help your credit rating.  [W]hen you sign up with a company THAT THE debt relief clearinghouse REFERS YOU TO, that shows the creditors that your are being responsible – that you want to take care of your debt SO YOU CAN be seen as a financially responsible person.";

83.     As stated by this Court in its summary judgment decision, such statements were made to consumers who responded to advertising by the *Zimmerman* Action defendants:

> However, their advertisements, employees, and informational materials undisputedly and repeatedly made statements to consumers indicating that their debt management services would "restore your credit rating" and "improve your credit." These representations were unequivocal, including comments such as the one in the script used to discourage settlement of debts indicating that a DMP "can only help your credit."

*Zimmerman*, 529 F. Supp. 2d at 274.

> Given the additional undisputed factual evidence now available to this court on summary judgment, it is clear that Defendants crossed the boundary from credit counseling into credit repair with their continued and insistent representations to consumers that their services could only help *improve* clients' credit. Defendants trespassed into the forbidden territory of offering hope that their services could

somehow allow a "fresh start" despite a past history of poor credit that, by law, could not be erased.

*Zimmerman*, 529 F. Supp. 2d at 275 (italics in original).

The ostensibly forward-looking orientation of these representations does not mitigate the obvious message to debtors that Defendant's services might modify the effect of their *past* credit history on their credit score.

*Zimmerman*, 529 F. Supp. 2d at 275.

84.   After the *Zimmerman* Action was filed, EBG and Kaplan continued to review the *Zimmerman* Action defendants' DMP advertising, but in a manner they acknowledged departed from their pre-*Zimmerman* Action conduct.  A December 3, 2003 memorandum from Kaplan and other EGB professionals to John Puccio and others provided Kaplan's and EBG's suggestions to a revised "Infomercial" and "Bankruptcy Commercials."  That memorandum stated in part:

We have reviewed the new infomercial, as revised on December 3, 2003, and have only very few comments.  Since most of the shorter commercials derive their content from the infomercial, any changes made in the infomercial would have to be carried over into the commercials where applicable.

Please be assured that, though our comments might seem nit-picky to you, the heightened sensitivity of legislators and regulators vis a vis the credit counseling industry requires us to review Cambridge Credit public representations with greater scrutiny than before.

| PROBLEMATIC CONTENT | RECOMMENDED ACTION | REASON |
|---|---|---|
| *** | *** | *** |
| Several references to | In light of pending class action | *Zimmerman v.* |

| improving credit ratings | litigation in Massachusetts, which invokes the *Credit Repair Organizations Act*, it might be unwise to make representations which suggest that we can improve a client's credit rating. | *Cambridge Credit et al.* |
|---|---|---|

85.     The statements and advice contained in EBG's and Kaplan's December 3, 2003 memorandum was an attempt to conceal the credit repair activities and advertising of the *Zimmerman* Action defendants, which resulted in the commission of or an attempt to commit a fraud or deception upon consumers.

86.     With knowledge of the falsity or misleading nature of the *Zimmerman* Action defendants' communications to consumers concerning their credit repair activities, EBG and/or Kaplan engaged in additional acts, omissions and attempts to commit frauds and deceptions upon consumers by assisting, advising and/or recommending that the *Zimmerman* Action defendants:  i) represent that CCCC and/or CBBPC were *bona fide* non-profit corporations and/or federal tax-exempt entities; ii) exaggerate or make false, misleading or deceptive statements concerning the benefits that consumers can or would receive upon enrollment in the *Zimmerman* Action defendants' DMPs; iii) omit disclosure that all DMP servicing and administration for CCCC, CBBPC and BCMC would be performed by for-profit companies owned and controlled by John and Richard Puccio, for the primary financial benefit and enrichment of John and Richard Puccio. Nevertheless, EBG continued to assist CCCC, CBBPC and the Puccios in obtaining and retaining sham non-profit and/or 501(c)(3) status, assisted and furthered the Puccios' conglomerate's false

and deceptive advertising, solicitation and representations to consumers provided with credit repair services by the *Zimmerman* Action defendants.

87.     Each member of Class 1 certified by the *Zimmerman* Action has been injured as a result of EBG and/or Kaplan's violations of CROA.

88.     Each member of Class 1 certified by the *Zimmerman* Action are entitled to pursue a claim against EBG and/or Kaplan pursuant to 15 U.S.C. §1679g to redress their violations of CROA.

89.     The Classes' CROA damages are restitutionary and are measured by the CROA as the "amount paid" by a consumer to the credit repair organization.  Plaintiffs demand damages from EBG and Kaplan, jointly and severally with one another and the *Zimmerman* Action defendants, in an amount equal to the total amount of fees paid by members of the certified *Zimmerman* Action Classes to the Zimmerman Action defendants in all years during the certified class periods that EBG and/or Kaplan provided services to the Zimmerman Action defendants or were CROA "persons."

## JURY DEMAND

The certified *Zimmerman* Action class representatives and classes demand a trial by jury on all issues so triable.

Dated: November 10, 2009

Respectfully submitted**,**

\_\_\_\_/s/ **Stephen G. Hennessy**\_
STEPHEN G. HENNESSY, ESQ.
(BBO No. 549914)
P.O. Box 477
Milton, MA 02816
Telephone: 617-696-1600
Facsimile: 617-696-1667

MORRIS POLICH & PURDY LLP
David Vendler (BBO 552811)
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:   213-891-9100
Facsimile:   213-488-1178

MICHIE HAMLETT LOWRY RASMUSSEN
   & TWEEL PLLC
Garrett M. Smith
500 Court Square, Suite 300, P.O. Box 298
Charlottesville, VA  22902-0298
Telephone:   434-951-7222
Facsimile:   434-951-7242

GREGORY S. DUNCAN, ESQ.
412 East Jefferson Street
Charlottesville, VA  22902
Telephone:  434-979-8556
Facsimile:  434-979-9766

G. OLIVER KOPPELL & ASSOCIATES
G. Oliver Koppell
Daniel Schreck
99 Park Avenue, 3rd Floor
New York, NY  10016
Telephone:  917-368-0400
Facsimile:  212-973-9494

WHALEN & TUSA, P.C.
Joseph S. Tusa
Paul C. Whalen
33 West 19th Street, 4th Floor
New York, NY  10011
Telephone:  212-400-7100
Facsimile:  212-658-9685

C. ALLISON POWELL, P.C.
C. Allison Powell
2625 Highland Avenue, Suite 705
Birmingham, AL  35205
Telephone:  205-930-4576
Facsimile:  503-905-1493

*Attorneys for Plaintiffs and Class Counsel
for the Certified Zimmerman Action Classes*