UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ANDREW ZIMMERMAN and KELLY : 
ZIMMERMANN, as class representatives for the :
certified ZIMMERMAN ACTION CLASSES, :
  :
    Plaintiffs, :
  : Civil Action
   v. : No. 09-30194-MAP
  :
EPSTEIN BECKER AND GREEN, P.C., PAUL M. :
KAPLAN, ESQ., SHEPPARD, MULLIN, RICHTER :
& HAMPTON, LLP, BRIAN J. DAVIS, P.C., :
BRIAN J. DAVIS, ESQ., P.C., BRIAN J. DAVIS, :
ESQ., SPENCE & DAVIS, LLP, DOUGLAS D. :
VIVIANI, P.C., and DOUGLAS D. VIVANI, ESQ., :
  :
    Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT PAUL M. KAPLAN'S MOTION TO DISMISS

Kurt Wm. Hemr (BBO #638742)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
Kurt.Hemr@skadden.com

Jonathan J. Lerner (admitted pro hac vice)
Maura Barry Grinalds (admitted pro hac vice)
Four Times Square
New York, New York  10036
(212) 735-3000
Jonathan.Lerner@skadden.com
MauraBarry.Grinalds@skadden.com

Counsel for Defendant Paul M. Kaplan, Esq.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................2

      A.     Mr. Kaplan's Representation of the Puccios and the Cambridge Entities ..............2

      B.     The Present Action.................................................................................................3

APPLICABLE STANDARDS ..............................................................................................4

ARGUMENT ........................................................................................................................4

I.      COUNT ONE FAILS AS A MATTER OF LAW AND MUST BE DISMISSED............4

      A.     Imposition of the Constructive Trust on Mr. Kaplan Violates His
              Constitutional Rights to Due Process and Exceeds this Court's Jurisdiction .........4

      B.     Plaintiffs' Claim for "Recovery of
              Constructive Trust Proceeds" Fails on Its Face ......................................................7

      C.     Plaintiffs' Constructive Trust Claim Is Facially Time-Barred ................................9

      D.     By Its Express Terms, the Court's Constructive
              Trust Does Not Apply to Fees Earned by Kaplan..................................................10

II.     PLAINTIFFS' CROA CLAIM FAILS AS A MATTER OF LAW .................................12

      A.     By Plaintiffs' Own Allegations, the CROA
              Claim Against Mr. Kaplan Is Facially Time-Barred .............................................12

      B.     Plaintiffs CROA Allegations Fail to Comply with Rule 9(b)................................13

      C.     Plaintiffs Fail to State a CROA Claim Against Mr. Kaplan ..................................14

             1.     Mr. Kaplan Is Not a "Person"
                    Within the Purview of Section 1679b(a)4 .................................................14

              2.     The Complaint Fails to Allege that Mr. Kaplan Violated CROA..............16

                   (a)     The December 3, 2003 Memorandum ...........................................16

                   (b)     The May 3, 2003 Memorandum ...................................................17

CONCLUSION....................................................................................................................20

## TABLE OF AUTHORITIES

### CASES

Alternative System Concepts, Inc. v. Synopsys, Inc.,
 374 F.3d 23 (1st Cir. 2004) ................................................................................4, 13, 14

Ashcroft v. Iqbal,
 129 S. Ct. 1937 (2009) ..................................................................................................4

Bergeron v. Ridgewood Securities Corp.,
 610 F. Supp. 2d 113 (D. Mass. 2009) ...........................................................................9

Berry v. Cook Motor Cars, Ltd.,
 No. AMD 09-426, 2009 WL 1971391 (D. Md. June 29, 2009) ..................................15

Browning v. Yahoo!, Inc.,
 No. C04-01463, 2004 WL 2496183 (N.D. Cal. Nov. 4, 2004)....................................13

Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik
 G.M.B.H. & Co. KG, 448 F. Supp. 2d 244 (D. Mass. 2006)....................................7, 9

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,
 511 U.S. 164 (1994).....................................................................................................15

Collins v. Nuzzo,
 244 F.3d 246 (1st Cir. 2001) ..................................................................................12, 13

Cunningham v. National City Bank,
 588 F.3d 49 (1st Cir. 2009) ...........................................................................................4

Demoulas v. Demoulas Super Markets, Inc.,
 424 Mass. 501, 677 N.E.2d 159 (1997) .........................................................................9

FTC v. American Institute for Research and Development,
 219 B.R. 639 (D. Mass. 1998) .......................................................................................8

Fafel v. DiPaola,
 399 F.3d 403 (1st Cir. 2005)..........................................................................................6

Feinman v. Lombardo,
 214 B.R. 260 (D. Mass. 1997) .......................................................................................7

Gargano v. Liberty International Underwriters, Inc.,
 572 F.3d 45 (1st Cir. 2009)............................................................................................2

General Telephone Co. of Southwest v. Falcon,
  457 U.S. 147 (1982)..........................................................................................4

Helms v. Consumerinfo.com, Inc.,
  436 F.Supp.2d 1220 (N.D. Ala. 2005) ...........................................................17, 19

Henry v. Westchester Foreign Automobiles, Inc.,
  522 F. Supp. 2d 610 (S.D.N.Y. 2007)..............................................................15

Hootstein v. Collins,
  No. 08-CV-30113-MAP, 2010 WL 143753 (D. Mass. Jan. 14, 2010).........................5

Jonker v. Kelley,
  268 F. Supp. 2d 81 (D. Mass. 2003) ...............................................................9

Kenney v. MML Investors Services, Inc.,
  266 F. Supp. 2d 239 (D. Mass. 2003) .............................................................2

Kusek v. Family Circle,
  894 F. Supp. 522 (D. Mass. 1995) ..................................................................4

Lopez v. ML #3, LLC,
  607 F. Supp. 2d 1310 (N.D. Fla. 2009)............................................................15

Maffei v. Roman Catholic Archbishop of Boston,
  449 Mass. 235, 867 N.E.2d 300 (2007) ...........................................................8

Mark Bell Furniture Warehouse, Inc. v. D.M. Reid Assocs., Ltd.
  (In re Mark Bell Furniture Warehouse, Inc.), 992 F.2d 7 (1st Cir. 1993) ...................8

Mathews v. Eldridge,
  424 U.S. 319 (1976).....................................................................................5, 6

Micromuse, Inc. v. Micromuse, PLC,
  304 F. Supp. 2d 202 (D. Mass. 2004) .............................................................9

Monier-Kilgore v. Flores,
  Nos. C054502, C056348, 2009 WL 1865126 (Cal. Ct. App. June 30, 2009) .............9

Motorola Credit Corp. v. Uzan,
  388 F.3d 39 (2d Cir. 2004)............................................................................5

Nechis v. Oxford Health Plans, Inc.,
  421 F.3d 96 (2d Cir. 2005).............................................................................9

North American Catholic Education Programming Foundation Inc., v. Cardinale,
567 F.3d 8 (1st Cir. 2009) ...........................................................................13

Operative Plasterers & Cement Masons International Ass'n, Local 8 v. AGJ
Construction, No. 08-6163, 2009 WL 4796764 (D.N.J. Dec. 9, 2009) ........................7

Palandjian v. Pahlavi,
614 F. Supp. 1569 (D. Mass. 1985) ................................................................8

Peacock v. Thomas,
516 U.S. 349 (1996) ..................................................................................6

Riccio v. Ford Motor Credit Co.,
238 F.R.D. 44 (D. Mass. 2006) ....................................................................17

Rolland v. Potter,
453 F. Supp. 2d 223 (D. Mass. 2006) .........................................................12, 13

Slack v. Fair Isaac Corp.,
390 F. Supp. 2d 906 (N.D. Cal. 2005) ...........................................................13

Stoneridge Investment Partners, LLC v. Scientific-Atlanta,
552 U.S. 148 (2008) .................................................................................15

Syngenta Crop Protection, Inc. v. Henson,
537 U.S. 28 (2002) ...................................................................................6

Trans-Spec Truck Service, Inc. v. Caterpillar Inc.,
524 F.3d 315 (1st Cir. 2008) ........................................................................4

U.S.I. Properties Corp. v. M.D. Construction Co.,
230 F.3d 489 (1st Cir. 2000) ........................................................................6

United States v. Pakala,
568 F.3d 47 (1st Cir. 2009) ........................................................................12

In re Wright,
No. 05-40186, 2007 WL 1459475 (N.D. Ala. May 16, 2007) ..................................15

Zimmermann v. Cambridge Credit Counseling Corp.,
529 F. Supp. 2d 254 (D. Mass. 2008) ....................................................14, 16, 19

Zimmermann v. BDO Seidman, LLP,
No. 09-cv-30190-MAP (D. Mass. filed Nov. 9, 2009) ..........................................1, 12

Zimmermann v. Wobig,
  No. 09-cv-30193-MAP (D. Mass. filed Nov. 10, 2009) ...................................................1

## STATUTES

15 U.S.C. § 1679 et seq. ................................................................................................2

15 U.S.C. § 1679b(a)(4) .............................................................................................14

15 U.S.C. § 1679i(1) ...................................................................................................13

28 U.S.C. § 3202 et seq. ...............................................................................................7

Fed. R. Civ. P. 9(b) .........................................................................................1, 2, 5, 20

Fed. R. Civ. P. 12(b)(1) ...........................................................................................1, 4

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1, 4

Fed. R. Civ. P. 19(a)(1)(A) ...........................................................................................9

## MISCELLANEOUS

5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.80[1] (3d ed. 2009) .................5

Restatement (first) of Restitution § 168(1) (1937) ...........................................................11

Restatement (first) of Restitution § 173 cmt. l (1937) ......................................................11

Defendant Paul M. Kaplan, Esq., respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), 12(b)(6), to dismiss the complaint in the above-captioned matter (the "Complaint" or "Compl.").

## PRELIMINARY STATEMENT

Plaintiffs in this case purport to represent members of a class certified in another action before this Court, Zimmerman v. Cambridge Credit Counseling Corp., No. 03-cv-30261-MAP (D. Mass. filed Nov. 4, 2003) (the "Zimmermann Action"), who recently obtained a judgment for $256 million against other parties who are strangers to this case. Apparently unable to collect that judgment from the defendants against whom it was entered, Plaintiffs have now embarked on an indiscriminate search for deep pockets – and seek to enforce that judgment against a slew of new parties who were never even named in the prior class action.[1] One such party is Mr. Kaplan, an attorney who merely provided *bona fide* legal services to the defendants to the Zimmermann Action as far back as a decade ago. (Compl. ¶¶ 16, 41.)

Plaintiffs' untimely and unprecedented claims against Mr. Kaplan must be dismissed for several separate and independent reasons. First, Plaintiffs' attempt to impose a constructive trust entered in the Zimmermann Action (the "Constructive Trust") on *bona fide* legal fees earned by Mr. Kaplan, even though Mr. Kaplan was not a party to the Zimmermann Action, fails as a matter of law because, *inter alia*: (i) the imposition of the Constructive Trust on Mr. Kaplan violates his due process rights and exceeds the Court's jurisdiction (see infra at §

---

[1] In addition to commencing suit against Mr. Kaplan and the other defendants in this Action, Plaintiffs have unleashed a variety of actions against others who were not parties to the underlying lawsuit, including, *inter alia*, Cambridge Credit Counseling Corp.'s ("CCCC") former accountants. See Zimmermann v. BDO Seidman, LLP, No. 09-cv-30190-MAP (D. Mass. filed Nov. 9, 2009); see also Zimmermann v. Wobig, No. 09-cv-30193-MAP (D. Mass. filed Nov. 10, 2009). BDO Seidman and other defendants have moved to dismiss the complaints against them. To the extent that their arguments also warrant dismissal of the claims against Mr. Kaplan, he respectfully adopts and incorporates them by reference as if more fully set forth herein.

I.A), (ii) this claim is facially time-barred (see infra at § I.C), (iii) there is no independent cause of action for a constructive trust under Massachusetts law (see infra at § I.B), (iv) Plaintiffs fail to satisfy the elements necessary for the equitable imposition of such a trust on Mr. Kaplan (see infra at § I.B), (v) by its express terms, the Constructive Trust does not apply to fees for *bona fide* professional services rendered by Mr. Kaplan (see infra at § I.D), and (viii) Plaintiffs are judicially estopped from contending otherwise.  (See infra at § I.D.)

Second, Plaintiffs' claim that Mr. Kaplan was a "person" who violated the Credit Repair Organization Act, 15 U.S.C. §§ 1679 et seq. ("CROA") by "advis[ing] and assist[ing] the Zimmerman Action defendants in making statements in their advertising promising credit repair in violation of CROA" (Compl. ¶ 78) fails as a matter of law because:  (i) Plaintiffs' CROA allegations are time-barred under the applicable five-year statute of limitations (see infra at § II.A), (ii) Plaintiffs' vague CROA allegations fail to satisfy the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure (see infra at § II.B), and (iii) Plaintiffs cannot state a cognizable claim against Mr. Kaplan under CROA because he was not a "person" under that statute, and in any case, Plaintiffs do not allege any violation by him.  (See infra at § II.C.)

## **STATEMENT OF FACTS**[2]

### A.    **Mr. Kaplan's Representation of the Puccios and the Cambridge Entities**

Paul M. Kaplan, Esq. is an attorney with an unblemished legal career who has been a member of the Massachusetts bar for over 30 years.  Mr. Kaplan represented defendants

---

[2]  This statement of facts is drawn from the allegations of the complaint and from the documents to which the complaint refers.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 n.1 (1st Cir. 2009) ("While we ordinarily do not consider materials that are outside the complaint when reviewing a motion to dismiss under Rule 12(b)(6), we make 'narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'") (quoting Watterson v. Page, 987 F.2d 1, 4 (1st Cir. 1993)); accord Kenney v. MML Investors Servs., Inc., 266 F. Supp. 2d 239, 241 (D. Mass. 2003) (Ponsor, J.).  Mr. Kaplan accepts all well-pled allegations in the Complaint as true only for the purposes of the instant Motion, and reserves all rights to challenge such allegations.

John and Richard Puccio (the "Puccios") and several companies operated by the Puccios (the "Cambridge Entities"), in the <u>Zimmermann</u> Action.  (Compl. ¶ 16.)  Mr. Kaplan began "advising and assisting" the Puccios and the Cambridge Entities in 1996 while he was a member of the law firm Baer Marks & Upham LLP.  (<u>Id.</u> ¶ 41.)  Subsequently, he continued representing these clients as member of the law firm Epstein Becker & Green, P.C. ("EBG"), and later at Sheppard, Mullin, Richter & Hampton, LLP ("Sheppard Mullin").  (<u>Id.</u> ¶ 16.)  Plaintiffs allege that Mr. Kaplan assisted the Puccios in establishing a credit counseling conglomerate by forming their for-profit and non-profit business entities, advised them on asset purchases and how to transfer a for-profit business model to a non-profit business headquartered in Massachusetts, and later represented defendants in various litigations, including the <u>Zimmermann</u> Action.  (<u>Id.</u> ¶ 16.)

Plaintiffs also allege that while serving as an attorney for the Puccios and the Cambridge Entities, Mr. Kaplan "was paid monies deriving from and traceable to the Constructive Trust."  (<u>Id.</u>)  Plaintiffs list twelve payments purportedly made to Mr. Kaplan between 2000 and 2005.  (<u>Id.</u>)  Significantly, Plaintiffs do not allege that any of the sums paid to Mr. Kaplan represented anything other than *bona fide* legal fees.  Nor do Plaintiffs allege that any such payments exceeded the fair value of services he rendered.

## B.    The Present Action

On March 18, 2009, this Court issued a final Order in the <u>Zimmermann</u> Action, ordering a Constructive Trust for the full amount of the $256 million judgment previously rendered in favor of the certified class in that action.  On November 10, 2009, more than a decade after Mr. Kaplan first rendered legal services to the Puccios, and four years after the last alleged payment from the Puccios or the Cambridge Entities to Mr. Kaplan, Plaintiffs filed suit, seeking recovery from Mr. Kaplan of "Constructive Trust Proceeds" (Count I) and alleging that Mr. Kaplan is a "person" under CROA who violated that statute (Count III).  (<u>See</u> Compl. ¶¶ 5-6.)

3

## APPLICABLE STANDARDS

A motion pursuant to Rule 12(b)(6) "test[s] the legal sufficiency of the complaint."  Kusek v. Family Circle, 894 F. Supp. 522, 527 (D. Mass. 1995).  To survive such a motion, "a complaint must . . . 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); accord Cunningham v. Nat'l City Bank, 588 F.3d 49, 52 (1st Cir. 2009) ("To survive a motion to dismiss, the complaint must 'contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'") (citations omitted); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (same).  Finally, for claims sounding in fraud, the heightened pleading requirements of Rule 9(b) require Plaintiffs to allege the "who, what, where and when" pertaining to the alleged fraud.  Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

## ARGUMENT

I.    **COUNT ONE FAILS AS A MATTER OF LAW AND MUST BE DISMISSED**[3]

A.    **Imposition of the Constructive Trust on Mr. Kaplan Violates His Constitutional Rights to Due Process and Exceeds this Court's Jurisdiction**

Extending the Constructive Trust from the Zimmerman Action to Mr. Kaplan, a

---

[3] This Court's prior certification of a putative class in the Zimmermann action does not automatically permit plaintiffs to proceed as a class in this new Action against defendants not a party to that action.  Plaintiffs claim that, "as the certified class representatives for the certified Zimmerman Action classes, they seek the return and refund of all Constructive Trust proceeds paid to or in the possession of all Defendants." (See Compl. ¶ 56.)  But, "[a] plaintiff may not turn a lawsuit into a class action simply by designating it as a class action in the pleadings." 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.80[1] (3d ed. 2009).  No class has been certified in this Action, and Plaintiffs do not even allege that any of the requirements under Rule 23(a) are met here.  Plaintiffs' attempt to recycle their past certification in this case, asserting distinct claims against new defendants ignores that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).  Accordingly, Plaintiffs lack standing to seek any relief on behalf of a putative class here and, to the extent they do, the Complaint must be dismissed.  Further, even if Plaintiffs could represent a class, they lack standing here for any claim within CROA's five-year statute of limitations because they terminated their relationship with CCCC in 2002 – over seven years before bringing suit.  (See EBG Memorandum of Law ("EBG Mem.") at 21-24.)

non-party to that action, manifestly violates his due process rights under the United States

Constitution.  Fundamental precepts of due process require "notice of the action sought" and "the

opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  <u>Mathews v.

Eldridge</u>, 424 U.S. 319, 333-34 (1976) (quoting <u>Armstrong v. Manzo</u>, 380 U.S. 545, 552 (1965));

<u>accord</u> <u>Hootstein v. Collins</u>, No. 08-CV-30113-MAP, 2010 WL 143753, at *10 (D. Mass. Jan. 14,

2010) (Ponsor, J.) ("[t]he basic protections provided by the constitutional requirement of due

process of law require that, before a significant deprivation of liberty or property takes place at

the state's hands, the affected individuals must be forewarned and afforded an opportunity to be

heard 'at a meaningful time and in a meaningful manner'") (citation omitted).  Thus, due process

precludes a court from binding a non-party to a judgment in a litigation to which the non-party

had no opportunity to be heard.  <u>See, e.g.</u>, <u>Motorola Credit Corp. v. Uzan</u>, 388 F.3d 39, 62 (2d

Cir. 2004) (rejecting, as inconsistent with fundamental notions of due process, the imposition of

a judgment (by constructive trust) on more than 130 non-parties to the litigation).

   If Plaintiffs intended to subject Mr. Kaplan to the Constructive Trust they should

have, but failed to, join him as a defendant in the <u>Zimmermann</u> Action.  <u>See</u> Fed. R. Civ. P.

19(a)(1)(A) (stating that joinder of party is necessary if "in that person's absence, the court

cannot accord complete relief among existing parties").  Because Mr. Kaplan was not a party to

the <u>Zimmermann</u> Action and Plaintiffs never provided Mr. Kaplan with any notice whatsoever of

their intent to impose a constructive trust <u>against him</u>,[4] due process precludes the relief Plaintiffs

---

[4]  Plaintiffs try to overcome the notice requirement by asserting that Plaintiffs sought a constructive trust from the commencement of the <u>Zimmermann</u> Action, and "each of the law firms and lawyers named as Defendants in this Action accepted engagements to represent the <u>Zimmermann</u> . . . defendants with that knowledge." (Compl. ¶ 43.)  But, knowledge that this inchoate remedy was being sought <u>against the defendants to that action</u> is vastly different from knowledge that Plaintiffs would eventually seek to disgorge *bona fide* fees earned in that litigation through imposition of a constructive trust against Mr. Kaplan.  The *reductio ad absurdum* of Plaintiffs' position is that all attorneys take on representation with the knowledge that legitimate fees earned by counsel could be disgorged

*(cont'd)*

seek in Count One.  See Mathews, 424 U.S. at 333-34.

Equally ill-conceived is Plaintiffs' reliance on the Court's "continuing jurisdiction" as a predicate for bringing this new action against Mr. Kaplan.  Plaintiffs' assertion that the Court "'expressly reserve[ed] jurisdiction' over matters related to the Zimmerman Action and litigation concerning the judgments entered in the Zimmerman Action for the benefit of the certified class" (Compl. ¶ 9) ignores this Court's March 18, 2009 Order, which made clear that the Court was only reserving enforcement jurisdiction in that action.  See March 18, 2009 Order (Dkt. No. 420) at 7.  A federal court's residual jurisdiction to enforce its judgments does not extend to subsequent litigations filed by plaintiffs years later against wholly new defendants.  See Fafel v. DiPaola, 399 F.3d 403, 411 (1st Cir. 2005); U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 498 (1st Cir. 2000).[5]

Indeed, the United States Supreme Court has unequivocally held that federal courts may not exercise ancillary jurisdiction over a new action against a new defendant by a plaintiff seeking to collect on a prior judgment.  See Peacock v. Thomas, 516 U.S. 349, 357, 359 (1996) (stating "[w]e have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment" and holding "as long as [the Federal Rules of Civil Procedure] protect a judgment creditor's ability to execute on a judgment, the district court's authority is adequately

---

*(cont'd from previous page)*
should their client later be found liable and unable to satisfy a judgment.  This outlandish – and we respectfully submit frivolous – position has no basis in law and should not be countenanced by this Court.

[5]  28 U.S.C. § 3202 and the All Writs Act, 28 U.S.C. § 1651, are similarly unavailing to confer jurisdiction upon this Court.  28 U.S.C. § 3202 addresses collection and enforcement of judgments in favor of the United States and is therefore inapplicable to the Plaintiffs' Complaint.  See 28 U.S.C. §§ 3202.  Similarly inapposite, the All Writs Act empowers a federal court to issue writs necessary to protect its jurisdiction, but does not confer an independent source of federal subject-matter jurisdiction on the Court.  See Syngenta Crop Protection, Inc. v. Henson, 537 U.S. 28, 34 (2002) ("The All Writs Act, alone or in combination with the existence of ancillary jurisdiction in a federal court, is not a substitute for [the] requirement [of jurisdiction].").

preserved, and ancillary jurisdiction is not justified over a new lawsuit to impose liability for a judgment on a third party"); accord Operative Plasterers & Cement Masons Int'l Assn., Local 8 v. AGJ Constr., LLC, No. 08-6163, 2009 WL 4796764, at *1 (D.N.J. Dec. 9, 2009) ("supplemental jurisdiction in an enforcement action 'does not extend to suits demanding that a third party use its legitimately held assets to satisfy a previously rendered judgment'") (citation omitted).

Accordingly, for all the foregoing reasons, Plaintiffs' attempt now to enforce the Constructive Trust against Mr. Kaplan violates due process and exceeds the Court's jurisdiction.

**B.      Plaintiffs' Claim for "Recovery of
         Constructive Trust Proceeds" Fails on Its Face**

It is well-settled under Massachusetts law that a constructive trust is an equitable remedy and does not constitute an independent cause of action as asserted in Count One.  See, e.g., Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.M.B.H. & Co. KG, 448 F. Supp. 2d 244, 263 n.16 (D. Mass. 2006) ("To the extent that Cambridge is seeking an imposition of a constructive trust, that is a remedy that the court may award to prevent unjust enrichment, it is not a cause of action."), aff'd, 510 F.3d 77 (1st Cir. 2007); Feinman v. Lombardo, 214 B.R. 260, 266 (D. Mass. 1997) ("Absent an underlying cause of action for fraud or other misconduct by the defendants, the Trustee's constructive trust claim is not viable because, standing alone, it is not an independent cause of action.").  Thus, even if this remedy did exist, and it does not, it would be enforceable only in the same action in which the trust was adjudicated.[6]

---

[6]  In this regard, even assuming, *arguendo*, that fees paid to Mr. Kaplan as much as a decade ago could possibly be included in the Constructive Trust created by the Court, and they cannot, this entire litigation represents an improper end-around the Receiver, Robb Evans & Associates LLC, that this Court appointed in the Zimmermann Action in its April 15, 2009 Order (Dkt. No. 432, the "Receivership Order").  At the January 29, 2009 Hearing, the Court stated that the Receiver would be "the one cutting the checks . . . [and] assembling the funds."  (Dkt. No. 414 at 26.) Counsel for Plaintiffs failed to object to the Court's characterization of the Receiver's role and even represented that the Receiver – and not the Plaintiffs – would be "corralling this money and then tracing it back to the sources."  (Id. at 9.)  Subsequently, in its Receivership Order, the Court expressly granted the Receiver the authority to, *inter alia*, "institute, compromise, adjust, appear in, intervene in, or become party to any and all other actions or proceedings in *(cont'd)*

Plaintiffs have not alleged any basis upon which to impose a constructive trust against Mr. Kaplan in this action.  It is established that a constructive trust is an equitable remedy employed to "prevent unjust enrichment resulting from fraud, a violation of a fiduciary duty or confidential relationship, mistake, or 'other circumstances' in which a recipient's acquisition of legal title to property amounts to unjust enrichment."  Maffei v. Roman Catholic Archbishop of Boston, 449 Mass. 235, 246, 867 N.E.2d 300, 312 (2007); see also Palandjian v. Pahlavi, 614 F. Supp. 1569, 1578 (D. Mass. 1985).  As this Court has previously recognized, except in certain rare circumstances, such as where mutual mistake has been made, courts will not impose a constructive trust absent a showing of wrongdoing.  FTC v. Am. Inst. for Research & Dev., 219 B.R. 639, 645-46 (D. Mass. 1998) (Ponsor, J.) (rejecting argument that funds in accounts at bank were held in constructive trust given "BayBank was not in any sense a wrongdoer against whom the court could exercise its equitable powers").

Here, Plaintiffs have not alleged any wrongdoing by Mr. Kaplan with respect to receiving the funds Plaintiffs belatedly and conclusorily claim are "derived from and traceable to the Constructive Trust."  (Compl. 52.)  Plaintiffs do not and cannot allege that Mr. Kaplan owed any fiduciary duties to or had any confidential relationship with Plaintiffs.  Nor do Plaintiffs allege that Mr. Kaplan made any misrepresentations, fraudulent or otherwise, to Plaintiffs.  Moreover, far from alleging Mr. Kaplan was unjustly enriched through fraud, Plaintiffs do not

---

*(cont'd from previous page)*

state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover Receivership Property or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order" (§ III ¶ 9).  Moreover, this Order explicitly prohibited, except by leave of the Court, the instant Plaintiffs – as "creditors, claimants" or "other persons or entities seek[ing] relief of any kind" – "from [c]ommencing, prosecuting, continuing or enforcing any suit or proceeding against or affecting . . . any part of the Receivership Property."  (Id. at 18 (emphasis added).)  Thus, Plaintiffs' present suit is an obvious affront on the Receivership Order and should be dismissed on this ground alone.  See generally In re Mark Bell Furniture Warehouse, Inc., 992 F.2d 7, 10 (1st Cir. 1993) (holding that trustee is "responsible for collecting all property of the estate and reducing it to money," and finding debtor lacked standing to challenge a bankruptcy court judgment confirming sale of property).

dispute that he provided *bona fide* legal services for the fees he received.[7]  (See Compl. ¶ 16.)

Because Plaintiffs do not – and cannot – advance any basis to impose a constructive trust on the

moneys purportedly paid to Mr. Kaplan, this claim must be dismissed as a matter of law.[8]

## C.    Plaintiffs' Constructive Trust Claim Is Facially Time-Barred

Plaintiffs' purported Constructive Trust claim is also indisputably barred by the

applicable statute of limitations.  This claim is not based on any contractual relationship between

the Plaintiffs and Mr. Kaplan.  Rather it seeks disgorgement of *bona fide* legal fees based on

alleged wrongful conduct.  (See Compl. ¶ 16.)  Accordingly, the three-year tort statute of

limitations governs this claim.[9]  Even if Plaintiffs had any conceivable basis to impose a

constructive trust on fees paid to Mr. Kaplan, and they do not, given Plaintiffs' allegation that the

last payment to Mr. Kaplan occurred in 2005, (Compl. ¶ 16), and that Shepherd Mullin (with

---

[7]  In this same vein, this claim should also be dismissed because Plaintiffs admit that Mr. Kaplan was a *bona fide* transferee for value.  Under well-settled Massachusetts law, "a constructive trust is not imposed where a recipient has given value or had no notice of the violation of duty."  Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 544, 677 N.E.2d 159, 188 (1997); see also Restatement (first) of Restitution § 168(1) (1937) (if "a person holding property in which another has a beneficial interest transfers title to the property [to a third person] in violation of his duty to the other, the transferee holds the property subject to the interest of the other, unless [that party] is a bona fide purchaser").  The Restatement provides, "where a person holding upon a constructive trust property . . . transfers it to another in satisfaction of or as security for a pre-existing debt or other obligation, the transfer is for value."  Id. § 173 cmt. l.  See generally Monier-Kilgore v. Flores, Nos. C054502, C056348, 2009 WL 1865126, at *29 (Cal. Ct. App. June 30, 2009) (upon issuance of judgment imposing constructive trust over client's funds, attorney not required to disgorge legitimate fees already paid to him).

[8] Mr. Kaplan incorporates by reference and adopts as if fully set forth herein Sheppard Mullin's and EBG's additional argument that the Constructive Trust claim must be dismissed because Plaintiffs cannot trace any alleged purported "Constructive Trust Funds" to attorneys' fees and dissipated many years ago.  (See Sheppard Mullin Mem. at 13-15, EBG Mem. at 9); see also Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 103 (2d Cir. 2005) (rejecting imposition of purported constructive trust where, *inter alia*, plaintiff failed to allege that defendant was under any obligation to segregate funds or that such funds were segregated in a separate account such that they could "'clearly be traced back to particular funds or property in the defendant's possession'") (citation omitted).

[9]  Claims for fraud and breach of fiduciary duty are governed by Massachusetts General Laws Chapter 260 § 2A, which provides that such claims are subject to a three-year statute of limitations.  See Bergeron v. Ridgewood Sec. Corp., 610 F. Supp. 2d 113, 148 (D. Mass. 2009); accord Micromuse, Inc.  v. Micromuse, PLC, 304 F. Supp. 2d 202, 214 (D. Mass. 2004).  Likewise, any claim for conversion or unjust enrichment predicated on a tort theory is also governed by a three-year statute of limitations.  See Jonker v. Kelley, 268 F. Supp. 2d 81, 84 (D. Mass. 2003) (Ponsor, J.) (conversion cause of action governed by three-year limitations period); Cambridge Literary Props., 448 F. Supp. 2d at  263 (although court denied constructive trust claim as not cognizable, three-year statute of limitations applied to underlying unjust enrichment claim predicated on conversion).

whom Mr. Kaplan was affiliated) only represented defendants until July 6, 2006 (id. at ¶17), the

tort statute of limitations expired in July 2009 at the latest.  The instant Action was commenced

on November 10, 2009, and thus is fatally time-barred.[10]

### D.   By Its Express Terms, the Court's Constructive Trust Does Not Apply to Fees Earned by Kaplan

Even if this Court's March 18, 2009 Order could be enforced against Mr. Kaplan,

and it cannot, it explicitly precludes any imposition of the Constructive Trust on "fair value" fees

earned by professionals such as Mr. Kaplan.  Under the terms of the March 18, 2009 Order, the

Constructive Trust applies to all monies or benefits in kind traceable as payment from any

defendant or former defendant to or for the benefit of (a) John or Richard Puccio, (b) members of

the families, friends or associates of John Puccio and/or Richard Puccio, and/or (c) any manager

or employee of any defendant or former defendant that is in excess of the fair value of such

person's services rendered.  (See Compl. ¶ 32 (quoting March 18, 2009 Order at 6) (emphasis

added).)  Unless this Court's order could be construed to permit Plaintiffs to claw back payments

by any defendant at any time to any third party service provider, which it cannot reasonably be

(see EBG Mem. at 6), fees to professional service providers clearly fall outside the scope of the

order.  Significantly, Plaintiffs do not and cannot make any claim that Mr. Kaplan was ever paid

"in excess of the fair value" for his services rendered.[11]

Indeed, the transcript from the January 29, 2009 Hearing clearly demonstrates that

---

[10]   At bottom, the claims against Mr. Kaplan are contrived litigation afterthoughts by Plaintiffs who failed to allege any claim against him for many years despite their knowledge that he represented the Puccios.  Given Plaintiffs' failure to inform the Court that they intended to use the Constructive Trust to try to claw back bona fide fees earned by defense counsel (see infra at § I.D), or to object in any way to the Court's declaration that defense counsel would be paid despite the Constructive Trust (see infra § I.D), it would be highly prejudicial to force Mr. Kaplan to mount a defense – much less disgorge fees – after so many years have passed since the alleged wrongdoing.  This epitomizes the kind of case that should be barred by the statute of limitations and the doctrine of laches.

[11]   Indeed, tacitly recognizing that Mr. Kaplan is not subject to the Constructive Trust, Plaintiffs issued demands for the return of monies paid to all other Defendants in the Action except Mr. Kaplan.  (Compl. ¶¶ 46-47.)

the Plaintiffs never stated an intention for the Constructive Trust to claw back past payments to

independent providers of professional services, let alone defense counsel, like Mr. Kaplan.  At

the outset of the Hearing, the Court informed the Plaintiffs that it did not see the need to impose

such a trust.  (Dkt. 414 at 7 ("<u>I have just questions about the need and efficacy of a constructive

trust. . . .  I'm not sure what the constructive trust adds</u>.") (emphasis added).)  Plaintiffs' counsel

then represented that Plaintiffs sought imposition of the trust only to provide the <u>Zimmermann</u>

class with a claim of priority "in the collection phase if there are disputes between the class and

other creditors . . . who are going to be picking at the bones of this bird." (<u>Id</u>. at 8-9.)  Plaintiffs

never suggested that the Constructive Trust could be used to reach innocent actors like Mr.

Kaplan for *bona fide* legal fees for services rendered more than four years before the

commencement of this Action.  Indeed, Plaintiffs failed to object when the Court unambiguously

stated that the defendants' *attorneys would be paid* despite the imposition of the Constructive

Trust.  (<u>See</u> <u>id.</u> at 23 ("I do recognize that Puccios' attorneys have received a retainer and are also

looking for additional money out of a particular asset and so that the Puccios' counsel may be

getting paid but the monitor/receiver is going to be getting paid, and I expect another bill to be

coming in fairly soon  . . . .  I'm wondering what my responsibilities are to also set up a machine

or procedure that will parcel out these funds as they come along.").)

            Plaintiffs' representations at the January 29, 2009 Hearing are consistent with

their stipulated February 15, 2008 Consent Decree (Dkt. No. 265), which likewise expressly

provided for defense counsel to be paid for legal services rendered despite the entry of a

preliminary injunction "preserving and preventing alienation of defendants' assets."  (<u>Id.</u> at 6

(providing that "<u>nothing in this Consent Decree . . . shall prohibit any [sic] Defendant from

paying its attorneys' and accountants' fees</u> within the budget approved by the Court") (emphasis

added).)  Accordingly, Plaintiffs' belated and improper attempt to impose the Constructive Trust

upon fees paid to Mr. Kaplan must be rejected.[12]

## II.      PLAINTIFFS' CROA CLAIM FAILS AS A MATTER OF LAW

### A.      By Plaintiffs' Own Allegations, the CROA Claim Against Mr. Kaplan Is Facially Time-Barred

On its face, Plaintiffs' CROA claim is time-barred by the five-year statute of

limitations contained in 15 U.S.C. § 1679i(1) which runs from "the date of the occurrence of the

violation involved."  15 U.S.C. § 1679i(1).[13]  As a matter of law, it is Plaintiffs' burden to

establish "facts sufficient to take the case out of the statute of limitations."  Collins v. Nuzzo, 244

F.3d 246, 253 (1st Cir. 2001); accord Rolland v. Potter, 453 F. Supp. 2d 223, 228 (D. Mass. 2006)

(Ponsor, J.) ("At bottom, this court recommends that the action be dismissed in its entirety unless

Plaintiff can prove that it was timely filed."), aff'd, 492 F.3d 45 (1st Cir. 2004).

Plaintiffs commenced this Action on November 10, 2009.  Despite the prolixity of

the Complaint, Plaintiffs nowhere allege any purported CROA violations by Mr. Kaplan after

November 10, 2004 – i.e. during the limitations period.  Apart from the allegations that Mr.

---

[12]  Finally, based on the Record in the Zimmermann Action, Plaintiffs are further judicially estopped from seeking to impose the Constructive Trust against Mr. Kaplan given the Plaintiffs' representation that such a trust was only sought to *give Plaintiffs priority over other creditors.*  See, e.g., U.S. v. Pakala, 568 F.3d 47, 59-60 (1st Cir. 2009) (judicially estopping party from asserting inconsistent position where the court previously adopted the party's earlier position and the party seeking to assert the inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party).  Having been paid years ago by the Zimmerman defendants, Mr. Kaplan is not vying for "priority" over Plaintiffs for funds covered by the Constructive Trust.  An order imposed by the Court to address Plaintiffs' purported need for priority over other creditors prospectively cannot be transmogrified into a license to seek retroactive disgorgement from defendants' counsel of legal fees paid up to a decade ago.

[13]  The discovery rule contained in 15 U.S.C. § 1679i(2) does not apply here because Mr. Kaplan is not alleged to be a credit repair organization ("CRO") -- let alone a CRO that materially and willfully misrepresented any material information which it was required to disclose to any consumer under CROA.  See 15 U.S.C. § 1679i(2).  Furthermore, even assuming *arguendo* that Plaintiffs' could stretch this discovery rule to apply to secondary actors such as Mr. Kaplan, it is beyond dispute that Plaintiffs "discovered" the actionable misrepresentations that form the basis of their present claims – i.e. misrepresentations by the Puccios and Cambridge Entities – on or before November 2003, when Plaintiffs filed their complaint in the Zimmermann Action.  In this regard, Mr. Kaplan adopts and incorporates by reference as if more fully set forth herein the related arguments advanced by EBG (see EBG Mem. at 20-21) and BDO in the related action, captioned Zimmermann v. BDO Seidman, LLP, No. 09-cv-30190-MAP (D. Mass. filed Nov. 9, 2009).  (See BDO Mem. at 19-20.)

Kaplan represented certain defendants in the <u>Zimmermann</u> and <u>Limpert</u> Actions (which is not alleged to be a CROA violation), the only allegations even involving Mr. Kaplan refer to activities <u>on or before December 2003</u>.  (<u>See, e.g.</u>, Compl. ¶ 39 (referring to November 1998 meeting between Mr. Kaplan and the Puccios); <u>id.</u> ¶ 40 (citing May 22, 2001 letter from Mr. Kaplan); <u>id.</u> ¶ 82 (discussing May 30, 2003 EBG memorandum); <u>id.</u> ¶ 41 (referring to Mr. Kaplan's representation of "the Puccios and their credit repair companies" in connection with a 1996 cease and desist order by the New York Banking Department); <u>id.</u> ¶ 84 (discussing Dec. 3, 2003 memorandum authored by Mr. Kaplan).)[14]  Because Plaintiffs cannot and do not allege any CROA violation by Mr. Kaplan within the limitations period (or at any time), this claim must be dismissed as time-barred.  <u>See</u> <u>Collins</u>, 244 F.3d at 253; <u>Rolland</u>, 453 F. Supp. 2d at 228.

**B.      Plaintiffs CROA Allegations Fail to Comply with Rule 9(b)**

Because 15 U.S.C. § 1679b(a)(4) sounds in fraud, claims under this section must meet the heightened pleading requirement of Rule 9(b).  <u>See</u> <u>Slack v. Fair Isaac Corp.</u>, 390 F. Supp. 2d 906, 911-12 (N.D. Cal. 2005) ("there can be no serious dispute that the heightened pleading standard of Rule 9(b) applies to plaintiff's claim under section 1679b(a)(4)"); <u>Browning v. Yahoo!, Inc.</u>, 2004 WL 2496183, at *3 (N.D. Cal. Nov. 4, 2004) (dismissing section 1679b(a)(4) claim for failure to satisfy Rule 9(b)); <u>see</u> generally <u>N. A. Catholic Educ. Programming Found. Inc., v. Cardinale</u>, 567 F.3d 8, 15 (1st Cir. 2009) (Rule 9(b) applies "where the core allegations effectively charge fraud").  To meet the requirements of Rule 9(b), a plaintiff must specify the "who, what, where and when" pertaining to the alleged fraud.  <u>Alternative Sys.</u>

---

[14]  Without alleging any dates, Plaintiffs also refer to Mr. Kaplan's purported preparation and submission of certain <u>Zimmermann</u> Action defendants' applications for tax exempt status.  (<u>See</u> Compl. ¶¶ 35-36.)  But, Mr. Kaplan's purported involvement with these applications necessarily predates the filing of the <u>Zimmermann</u> Action in 2003, which explicitly targeted the Zimmermann defendants' acquisition of not-for-profit status.  <u>Id.</u> at §§ 43-44, 144-45. (<u>See, e.g.</u>, <u>Zimmermann</u> Action Compl. (Dkt. No. 1), filed Nov. 3, 2003, ¶¶ 37-39, 46.)  Defendant Kaplan adopts and incorporates the related arguments advanced by EBG.  (<u>See</u> EBG Mem. at 18 n.14.)

Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004).

The Complaint utterly fails to satisfy the heightened pleading requirements mandated by Rule 9(b). The Complaint includes allegations of unspecified advice or assistance allegedly rendered by "EBG and/or" Mr. Kaplan at unspecified times. (See, e.g., Compl. ¶ 86; see also id. at ¶¶ 36, 38, 78.) In most instances, the Plaintiffs simply track the language of the statute without providing the who, what, where and how of the allegedly fraudulent conduct as required by Rule 9(b). (See id. ¶¶ 78-81, 86.) Accordingly, the Complaint must also be dismissed for Plaintiffs' failure to satisfy Rule 9(b).

**C.      Plaintiffs Fail to State a CROA Claim Against Mr. Kaplan**

**1.      Mr. Kaplan Is Not a "Person" Within the Purview of Section 1679b(a)4**

Even if Plaintiffs' CROA claim were not fatally time-barred, which it is, and even if Plaintiffs satisfied Rule 9(b), which they do not, the Complaint fails to state any CROA violation by Mr. Kaplan. Plaintiffs allege that Mr. Kaplan violated 15 U.S.C. § 1679b(a)(4), which provides that "no person" may "engage, directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization." 15 U.S.C. § 1679b(a)(4).

As a threshold matter, Plaintiffs cannot demonstrate that Mr. Kaplan is a "person" within the purview of CROA. Plaintiffs predicate their entire CROA claim against Mr. Kaplan, an outside professional service provider, on his provision of *bona fide* legal services to the Puccios and the Cambridge Entities – former clients who were found by this Court to have violated CROA. Zimmerman v. Cambridge Credit Counseling Corp., 529 F. Supp. 2d 254, 279-81 (D. Mass. 2008). However, there is no suggestion in the legislative history of CROA that Congress intended to drag attorneys, accountants, tax advisers, consultants and all other outside

14

professionals into court every time a CRO or someone closely associated with a CRO allegedly

violates CROA.  See Henry v. Westchester Foreign Autos, Inc., 522 F. Supp. 2d 610, 613

(S.D.N.Y. 2007) ("Congress' focus in enacting the CROA was on the credit repair industry, and

specifically for regulation of credit repair organizations. Although this section uses the word

'person,' it is clear that it was not Congress' intent to have CROA apply to all persons, whether

they are associated with credit repair or not. Thus, only a credit repair organization or a 'person'

associated with a credit repair organization can violate the CROA.") (emphasis added).[15]

       Plaintiffs' unprecedented expansion of liability under Section 1679b(a)(4) must be

rejected by this Court.  As outside counsel merely advising his clients on legal issues, Mr.

Kaplan's role is far too attenuated from the provision of credit repair services for Section 1679b

to apply.  Indeed, the majority view is that Section 1679b only applies to CROs and persons

closely associated with CROs.  See, e.g., Berry v. Cook Motor Cars, Ltd., No. AMD 09-426,

2009 WL 1971391, at *2 (D. Md. June 29, 2009) ("the statute's use of the term 'no person' is to

be understood to refer to persons acting on behalf of or in conjunction with a credit repair

organization"); accord Lopez v. ML #3, LLC, 607 F. Supp. 2d 1310, 1313 (N.D. Fla. 2009)

(rejecting expansive interpretation of CROA); Henry, 522 F. Supp. 2d at 614 (S.D.N.Y. 2007)

(granting summary judgment for a corporation because it was "not a credit repair organization or

associated with any such organization"); In re Wright, No. 05-40186, 2007 WL 1459475, at *11

(N.D. Ala. May 16, 2007) (rejecting expansive interpretation of "person" under CROA).

Consistent with this view, this Court in Zimmermann dismissed a Section 1679b(a) claim against

---

[15] To hold otherwise would ignore the well-settled rule that where Congress is silent on the issue of secondary
liability, courts will not expand the scope of a statute to secondary actors.  E.g., Stoneridge Inv. Partners, LLC v.
Scientific-Atlanta, Inc., 552 U.S. 148, 166-67 (2008) (rejecting secondary liability under § 10(b) given the "narrow
dimensions [the Court] must give to a right of action Congress did not authorize when it first enacted the statute");
accord Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994).

Southfork Asset Management Corp., an entity that "was apparently involved in equipment resales" that did not have "any significant role in the Puccios' credit repair business." 529 F. Supp. 2d at 280 n.27.

While Plaintiffs allege that Mr. Kaplan "advised and assisted" certain CROs (see Compl. ¶ 78), Mr. Kaplan admittedly was just an outside service provider and there is no allegation that he was closely associated with any of these CROs. Plaintiffs can cite no case where the mere provision of legal services to a CRO suffices to establish liability under Section 1679b(a)(4). Indeed, if adopted, Plaintiffs' unprecedented expansion of liability under Section 1679b would open the flood gates to categorically improper claims not intended by the statute – such as those asserted by Plaintiffs here – and deter outside professionals from assisting and advising CRO clients. Accordingly, this Court should reject Plaintiffs' attempt to enlarge the scope of this statute and dismiss the CROA claim against Mr. Kaplan as a matter of law.

## 2. The Complaint Fails to Allege that Mr. Kaplan Violated CROA

### (a) The December 3, 2003 Memorandum

Even assuming, *arguendo*, that Mr. Kaplan could be deemed a "person" subject to liability under Section 1679b(a)(4) – which he cannot – and even if Plaintiffs' claims were not conclusively time-barred, which they are, Plaintiffs wholly fail to allege that Mr. Kaplan ever engaged in any act that resulted in a fraud or deception in connection with the offer or sale of services of a CRO. According to the most particularized -- but still deficient -- allegation alleging that Mr. Kaplan gave legal advice pertaining to communications with consumers of credit repair services, far from committing a violation of 15 U.S.C. § 1679b(a)(4), Plaintiffs allege that Mr. Kaplan counseled John Puccio not to make statements Plaintiffs contend were in violation of CROA. (See Compl. ¶ 84.) To be sure, Plaintiffs make the conclusory assertion that "[t]he statements and advice contained in [the December 3, 2003 memorandum from Mr. Kaplan

16

to Mr. Puccio] . . . resulted in the commission of or an attempt to commit a fraud or deception

upon consumers" (Compl. ¶ 85); but even a cursory examination of the actual text quoted from

the memorandum shows <u>Mr. Kaplan merely advised Mr. Puccio not to make the statements</u>

<u>Plaintiffs contend were improper</u>:  "it might be unwise to make representations which suggest

that we can improve a client's credit rating."  (<u>See</u> Compl. ¶ 84 (quoting Dec. 3, 2003

memorandum).)[16]

### (b)    The May 3, 2003 Memorandum

In the same vein, Plaintiffs' attempt to rely on the May 30, 2003 EBG

memorandum to establish a CROA violation by Mr. Kaplan, (<u>see</u> Compl. ¶ 82), should be

rejected for several separate and independent reasons.[17]

<u>First</u>, Plaintiffs fail to attribute this memorandum to Mr. Kaplan.  (<u>See</u> Compl. ¶

82.)  <u>Second</u>, to sufficiently plead a violation of Section 1679b(a)(4), Plaintiffs must allege either

(i) their individual reliance on representations made directly or indirectly by Mr. Kaplan in

connection with the offer or sale of the services of the CRO, or (ii) Mr. Kaplan's specific intent

to defraud.  <u>See</u> <u>Helms v. Consumerinfo.com, Inc.</u>, 436 F.Supp.2d 1220, 1236 (N.D. Ala. 2005)

("[B]ecause [§ 1679b(a)(4)] provides that 'an attempt to commit, a fraud' is a violation, the court

finds that the <u>Plaintiff may succeed on this claim, without showing individual reliance, only if he</u>

<u>can show specific intent to defraud</u>.  Otherwise, reliance is required under § 1679b(a)(4).")

---

[16]   This Court need not accept as true allegations or legal conclusions that are internally inconsistent or contradicted
by documents incorporated by reference in the complaint.  <u>See</u> <u>Riccio v. Ford Motor Credit Co.</u>, 238 F.R.D. 44, 47
(D. Mass. 2006) ("The Court is not required to accept all factual allegations in the complaint, however, and will
exempt 'those "facts" which have since been conclusively contradicted by plaintiffs' concessions or otherwise.'")
(quotation omitted).  Here, stripped of the conclusory assertions, the documentary evidence relied upon by Plaintiffs
contradicts their baseless allegations and mandates that this claim be dismissed.

[17]   Mr. Kaplan incorporates by reference and adopts as if fully set forth herein the related arguments advanced by
EBG.  (<u>See</u> EBG Mem. at 14-19.)

(emphasis added).  Here, Plaintiffs have alleged neither.[18]

Moreover, in a non sequitur, Plaintiffs aver that Mr. Kaplan and others "advised CCCC to advertise its DMP's by representing that DMPs can repair consumers' credit, while knowing that the Cambridge family of companies controlled by [the Puccios] did not comply with notice, disclosure and other consumer protections required by [§ 1679c of] CROA." (Compl. ¶ 82).  On its face, the alleged failure to comply with the requirements of Section 1679c does not constitute fraud, much less render separate and distinct alleged statements about potential credit repair false or deceptive.  Further, Plaintiffs' bald averment of Mr. Kaplan's "knowledge" woefully fails to satisfy Plaintiffs' requirement to allege with particularity the specific intent to defraud under Section 1679b(a)(4).  (See supra at § II.B.)

Third, even if Plaintiffs had alleged individual reliance or fraudulent intent, which they have not, Plaintiffs fail to allege that the contents of the May 30, 2003 memorandum were actionable at the time the memorandum was purportedly drafted by EBG.  Here, Plaintiffs attempt to assert a CROA violation based on EBG's purported suggestion to include certain "alternative language . . . in a Debt Relief Clearinghouse, Ltd. advertisement," including such statements as "'following the program can actually help your credit rating.'"  (Id. ¶ 82 (quoting May 30, 2003 memorandum).)  But, Plaintiffs fail to allege that this statement was actually false, misleading or deceptive in any way.  Plaintiffs' inapposite citations to this Court's January 7, 2008 opinion are unavailing.  (See Compl. ¶¶ 83 (quoting Zimmerman, 529 F. Supp. at 274, 275.)  In that opinion, this Court did not find statements equivalent to those contained in the May 30, 2003 memorandum per se actionable under CROA but only discussed such statements in the

---

[18]   Plaintiffs fail to even allege that the draft ads were ever finalized and communicated to them, or that they relied on them.

context of determining whether defendants were CROs.  See Zimmerman, 529 F. Supp. at 275

(finding defendants to be CROs given they "crossed the boundary from credit counseling into

credit repair with their continued and insistent representations to consumers that their services

could only help improve clients' credit").  As this Court plainly recognized in the Zimmermann

Action, "[t]he initial inquiry into whether an entity is a [CRO] is merely the first step towards

liability, which a CRO may still avoid by complying with CROA and avoiding deceptive or

misleading statements about its services."  Id. 529 F. Supp. at 275 n.19 (citing 15 U.S.C. §§

1679a-g; emphasis added).  Thus, any time a CRO makes a forward-looking statement with

respect to its credit repair services it is not liable per se for a CROA violation, and, a fortiori,

neither is an attorney who purportedly "advised and assisted" the CRO.  See also Helms v.

Consumerinfo.com, 436 F. Supp. 2d 1220, 1232 (N.D. Ala. 2005) (while statements about ability

to improve credit rating may render entity a CRO, they are not necessarily false or per se

deceptive: "in certain instances and over a period of time, the customer's credit rating might

improve.")  The complaint is devoid of any allegations, much less particularized ones, showing

that at the time many years ago Mr. Kaplan ("and/or" EBG) allegedly advised on these

statements in the draft advertisements, that they knew or had any basis to believe they were false.

   Accordingly, even assuming CROA applies to Mr. Kaplan, which it does not, he

is not alleged to have made, directly or indirectly, any deceptive or misleading statements about

the services of a CRO, and thus Plaintiffs' CROA claim against him must be dismissed.[19]

---

[19]  Plaintiffs' suggestion that the decade-old statements made in the CCCC Application 1023 violated CROA
because they were "subsequently repeated to consumers nationwide," (Compl. ¶ 35), fails for the same  reasons.

## CONCLUSION

For the foregoing reasons, Mr. Kaplan respectfully requests that the Court dismiss all claims against him with prejudice.

Dated:  February 12, 2010
       Boston, Massachusetts

Respectfully submitted,

/s/ Kurt Wm. Hemr
Kurt Wm. Hemr (BBO #638742)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Beacon Street
Boston, Massachusetts  02108
(617) 573-4800
Kurt.Hemr@skadden.com

Jonathan J. Lerner (admitted pro hac vice)
Maura Barry Grinalds (admitted pro hac vice)
Four Times Square
New York, New York  10036
(212) 735-3000
Jonathan.Lerner@skadden.com
MauraBarry.Grinalds@skadden.com

Counsel for Defendant Paul M. Kaplan, Esq.

## CERTIFICATE OF SERVICE

I, Kurt Wm. Hemr, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on February 12, 2010.

Dated:  February 12, 2010

/s/ Kurt Wm. Hemr
Kurt Wm. Hemr